# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**THOMAS E. RYAN**,                                  Chapter 13
     Debtor                                  Case No. 06-11069-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the "United States' Motion for Summary Disposition of Contested Matter and Determination that Debtor's 1993 and 1995 Tax Liabilities Have Not Been Discharged" (the "Motion for Summary Judgment"). The Internal Revenue Service ("IRS") filed its Motion for Summary Judgment pursuant to Fed. R. Bankr. P. 9014 and 7056 with respect to the "Motion of the Debtor, Thomas E. Ryan, for Determination of Status of Discharge, Pursuant to 11 U.S.C. § 1328, Regarding Claim of the United States of America, Internal Revenue Service" (the "Determination Motion") filed by the debtor, Thomas E. Ryan (the "Debtor"). The Debtor filed his Determination Motion following the IRS's attempted seizure of his property after the Debtor received his discharge and this case was closed. The Debtor filed a Response to the Motion for Summary Judgment, opposing summary judgment in favor of the IRS and seeking summary judgment with respect to the discharge of his 1993 and 1995 income tax liabilities. Accordingly, the Court will treat the

1

Debtor's Response as a cross-motion for summary judgment (the "Cross-Motion").[1]

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b) and the order of reference from the United States District Court for the District of Massachusetts. *See* Massachusetts District Court Local Rule 201. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The Court now makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## II. FACTS AND PROCEDURAL HISTORY

On January 17, 2002, the Debtor and his spouse, Susan M. Ryan, filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On Amended Schedule E - Creditors Holding Unsecured Priority Claims, the Debtor and Susan listed the IRS as the holder of a claim in the total amount of $56,465 for "1040" taxes for the years 1993, 1995, 1996 and 1997. The Debtor and Susan received a discharge of all dischargeable debts on August 21, 2002. On Apri1 20, 2006, the Debtor filed the instant case under Chapter 13 of the Bankruptcy Code. On April 24, 2006, he filed Amended Schedule E - Creditors Holding Unsecured Priority Claims, in which he reported that he had no creditors holding unsecured priority claims, and Amended Schedule F - Creditors Holding Unsecured Nonpriority Claims, in which he listed the IRS as holding a claim in an unknown amount for "1993-1999 1040 Taxes." On May 26, 2006, the Debtor filed a Chapter 13 plan in which

---

[1] The Court observes that the proper procedure for resolving this dispute was the filing of a complaint pursuant to 11 U.S.C. § 523(a)(1). *See* Fed. R. Bankr. P. 7001(6). Nonetheless, because the parties agreed to resolve this matter through cross-motions for summary judgment, the Court will determine the matter in the present procedural context.

he provided for no secured or priority claims and listed general unsecured claims as
"Unknown % $28,188."

The IRS timely filed a proof of claim on June 5, 2006 (the "Original Claim") in which
it asserted a secured claim in the amount of $25,050, an unsecured priority claim in the
amount of $4,709.21, and a general unsecured claim in the amount of $68,995.15 as follows:

**Secured Claims:**

| Kind of Tax | Tax Period | Date Tax Assessed | Total Claim |
| --- | --- | --- | --- |
| Income | 12/31/1993 | 05/20/2002 | $25,050.00 |

**Unsecured Priority Claims:**

| Kind of Tax | Tax Period | Date Tax Assessed | Total Claim |
| --- | --- | --- | --- |
| Income | 12/31/2005 | Unassessed-No Return 1 | $4,709.21 |

**Unsecured General Claims:**

| Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
| --- | --- | --- | --- | --- |
| Income | 12/31/1993 | 05/20/2002 | $0.00 | $ 2,798.60 |
| Income | 12/31/1995 | 05/20/2002 | $10,859.00 | $11,235.95 |
| Income | 12/31/1996 | 05/20/2002 | $9,013.00 | $ 7,785.40 |
| Income | 12/31/1997 | 05/20/2002 | $10,096.00 | $ 7,108.59 |
| Income | 12/31/1999 | 05/22/2000 | $0.00 | $ 1,199.69 |
| Income | 12/31/2000 | Unassessed-No Return 1 | $5,000 | $ 0.00 |
| | | Penalty & Interest | | $3,898.92 |
| | | Total | | $ 68,995.15 |

1: UNASSESSED TAX LIABILITIES HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED.
WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW THE CLAIM WILL
BE AMENDED.

As is clear from the above chart, the Original Claim reflected that there were no assessment dates for the 2000 and 2005 tax years as there were "no returns" for those years. The Debtor objected to the Original Claim on June 12, 2006.  He asserted that the secured portion of the claim, for taxes owed for the 1993 tax year, arose out of a lien which was recorded during the pendency of the Debtor's prior Chapter 7 case without relief from stay and was thus voidable.  With respect to the priority portion of the claim for the 2005 tax year for which there was "no return," the Debtor attached an unsigned copy of his 2005 return to the Objection to Claim.  Based upon the foregoing, the Debtor recommended that the claim should be allowed as an unsecured claim in the amount of $94,045.15 (representing the total amount of the claim, less the $4,709.21 priority claim based on the 2005 tax year).

On June 22, 2006, the IRS filed an Objection to Confirmation of the Debtor's plan in which it objected to the treatment of its secured and general unsecured claims.  With respect to the 2000 and 2005 tax years, the Objection provided, in part, the  following:

> The Service's priority claim consists of an estimated income tax claim for the 2005 taxable year. This return has since been filed; there is no tax liability due for the 2005 taxable year. The Service will be amending its proof of claim to reflect that there is no liability for the 2005 taxable year, once other issues regarding the proof of claim are resolved.

> [T]he plan should not be confirmed since the debtor has failed to file a federal income tax return for the 2000 taxable year.

> ***

> Without receipt of the past due return from the debtor and a reasonable opportunity to examine said return, the Service cannot determine the correct

4

amount of its claim. The Service was forced to estimate the debtor's 2000 tax liability.

The Service should be allowed at least 60 days from the filing of *each* past due tax return to survey the return and adjust the amount on its amended Proof of Claim to reflect the proper tax due. *The tax shown on the Proof of Claim after the survey of each past due tax return shall remain non-dischargeable until paid.*

(emphasis added).

Thus, in its Objection to Confirmation, the IRS acknowledged that it had received the Debtor's 2005 tax return but that the 2000 tax return remained unfiled. Although there was no specific reference to any other unfiled returns, the IRS made the general statement that "the tax shown on the Proof of Claim after the survey of each past due tax return shall remain non-dischargeable until paid." The Objection to Confirmation was filed and signed by Attorney Nina P. Ching ("Attorney Ching") on behalf of the IRS. The Debtor filed a Response to the Objection to Confirmation on August 15, 2006 in which he stated that he had recently filed his 2000 tax return[2] and reiterated that the secured portion of the claim was based on a voidable lien.

The Court conducted a hearing on September 28, 2006 with respect to the Debtor's Objection to the Original Claim and the IRS's Objection to Confirmation. Based upon the agreement of the parties as stated in open Court, the Court sustained the Debtor's Objection to the Original Claim and ordered the IRS to amend its proof of claim by October

---

[2] The Debtor provided no filing date for the 2000 return, but other portions of the record reflect that the Debtor filed the 2000 return on September 8, 2006, three weeks after the filing of his Response to the Objection to Confirmation.

30, 2006.  The parties also agreed to continue the hearing on the Objection to Confirmation which was later rendered moot when the Debtor filed a further amended plan.

On October 18, 2006, the IRS filed its amended proof of claim (the "Amended Claim") in which it asserted a secured claim in the amount of $5,050 and a general unsecured claim in the amount of $90,170.20 as follows:

**Secured Claims**:

| Kind of Tax | Tax Period | Date Tax Assessed | Total Claim |
| --- | --- | --- | --- |
| Income | 12/31/1993 | 05/20/2002 | $5,050.00 |

**Unsecured General Claims:**

| Kind of Tax | Tax Period | Date Tax Assessed | Interest and Tax Due |
| --- | --- | --- | --- |
| Income | 12/31/1993 | 05/20/2002 | $20,196.12 |
| Income | 12/31/1995 | 05/20/2002 | $22,094.95 |
| Income | 12/31/1996 | 05/20/2002 | $16,798.40 |
| Income | 12/31/1997 | 05/20/2002 | $17,204.59 |
| Income | 12/31/1999 | 05/22/2000 | $1,199.69 |
| Income | 12/31/2000 | 10/30/2006 | $4,550.46 |
|  |  | Penalty & Interest | $8,125.99 |
|  |  | Total | $90,170.20 |

Thus, the Amended Claim reflected no liability for, or even a reference to, the 2005 tax year and reflected a tax assessment date of "10/30/2006" for the 2000 tax year instead of the previous designation of "Unassessed-No Return."  Notably, the phrase "No Return" did not appear anywhere on the Amended Claim and the footnote present on the Original Claim concerning unassessed liabilities for unfiled returns was also absent from the

Amended Claim.

The Debtor filed a Second Amended Chapter 13 Plan on February 12, 2007 (the "Plan") in which he provided, consistent with the Amended Claim, for payment in full of the IRS's secured claim in the amount of $5,050 over the 60 month plan term.[3]  The Plan also provided for the payment of a 29.73% dividend for general unsecured claims, totaling $100,865.[4]  The Plan contained no separate category for nondischargeable claims, did not provide for the discharge of any general unsecured tax claims, and was silent with respect to the dischargeability of any claims.[5]

Due to the absence of any objections, the Court confirmed the Plan on September 25, 2007.  The Debtor made all payments under the Plan and filed a Motion for Entry of Discharge on February 6, 2012 which the Court allowed on April 30, 2012.  On the same date, the Court entered the discharge order.

Shortly after the entry of the discharge, on May 7, 2012, the Court closed the case. On July 23, 2012, the Debtor filed a Motion to Reopen the Case in which he asserted that

---

[3] The parties apparently resolved the issue concerning the validity of the tax lien which was recorded during the Debtor's prior Chapter 7 case.

[4] The Plan contained no breakdown or description of the type of general unsecured claims to be paid.

[5] Massachusetts Local Bankruptcy Rule, Appendix 1,  13-4(a), as in effect on the date of the filing of the Plan, provided that "A chapter 13 plan shall conform to MLBR Official Local Form 3, with such alterations as may be appropriate to suit the circumstances." Official Local Form 3, as then in effect, provided a separate category of Unsecured Claims entitled "Non-Dischargeable Unsecured Claims." *See* Official Local Form 3-Section V C.  The Debtor did not use that form in this case.

7

the IRS issued a Notice of Intent to Seize Property on June 18, 2012 for claims which were "paid in full by the Debtor in his Chapter 13 Bankruptcy proceeding" and that the IRS's actions raised "for the very first time issues concerning 11 U.S.C. § 523 notwithstanding the [Amended] Claim . . . . " The Court allowed the Motion to Reopen on August 6, 2012 for the purpose of determining whether the tax obligations in question had been discharged.

The Debtor filed the Determination Motion on August 14, 2012 to which he attached copies of the notices issued by the IRS in furtherance of its collection efforts. The IRS issued to the Debtor on June 18, 2012 a separate "Notice of intent to levy - Intent to seize your property or rights to property" for each of the tax years 1993, 1995 and 2000 (the "Seizure Notices"). According to the Seizure Notices, the total amount due for all three years was $44,577.88, consisting of $17,783.45 for 1993, $22,333.66 for 1995, and $4,460.77 for 2000. The Debtor asserted in the Determination Motion that the IRS's claim was fully litigated during the claims objection process and that the IRS "is bound by its Proof of Claim . . . and the Confirmation Order of this Court" and that "[t]he Entry of Discharge in this proceeding pursuant to 11 U.S.C. § 1328 discharges the Debtor on all of the obligations to the Internal Revenue Service, all as outlined and itemized in their Proof of Claim filed with this Court." Finally, the Debtor requested that the Court enter an order finding that the Debtor was discharged of all of his obligations to the IRS as of the date of the filing of this case, as itemized in the Amended Claim.

The IRS filed a Response to the Determination Motion on August 27, 2012 and asserted the following:

> 1. The debtor did not file tax returns for the taxable years 1993 and 1995.
> 2. The Service assessed income tax against the debtor for the taxable year 1993 on May 20, 2002. Because the debtor did not file a return for 1993, the Service assessed the tax based on a return substitute prepared pursuant to 26 U.S.C. § 6020(b).
> 3. The Service assessed income tax against the debtor for the taxable year 1995 on May 20, 2002. Because the debtor did not file a return for 1995, the Service assessed the tax based on a return substitute prepared pursuant to 26 U.S.C. § 6020(b).
> 4. The debtor filed a tax return for the taxable year 2000 on September 8, 2006, and the Service assessed the tax reported thereon on October 30, 2006.

Thus, the IRS considered the 1993 and 1995 returns to be unfiled by the Debtor and the 2000 return to have been filed late by the Debtor.  The IRS maintained that pursuant to 11 U.S.C. § 523(a)(1)(B), which renders a tax debt nondischargeable if a return is filed after two years before the filing of the bankruptcy petition or if a return is not filed, the Debtor's tax liabilities for the taxable years 1993, 1995, and 2000 were excepted from discharge.  The Court conducted a hearing on the Determination Motion on November 1, 2012 and thereafter issued a pretrial order.

## III. THE SUMMARY JUDGMENT RECORD

A. <u>The Motion for Summary Judgment and the Cross-Motion</u>

On June 17, 2013, the IRS filed the Motion for Summary Judgment which included a memorandum of law, a statement of undisputed material facts, the affidavits of Attorney Susan Correia-Champa ("Attorney Champa"), the Debtor's prior tax counsel, and Michael P. Rodkey ("Rodkey"), an IRS Bankruptcy Specialist who prepared the IRS's proofs of claim

in this case, along with several exhibits.[6]

Through the Motion for Summary Judgment, the IRS seeks an order that the Debtor's federal income tax liabilities for the 1993 and 1995 tax years were not discharged in this case pursuant to 11 U.S.C. § 523(a)(1)(B)(i)(returns not filed). The IRS produced an affidavit of Attorney Champa, dated April 13, 2006, in which she attested that the Debtor retained her in June of 1999 "to represent him regarding some outstanding issues with the Department of Revenue."[7]  She further attested that she received correspondence "[on or about April 20, 2000 . . . from Anne M. Lawler [of the IRS] requesting an updated 2848 power of attorney form, and requesting tax returns for the years 1993, 1994, 1995, 1996, 1997 and 1999." According to Attorney Champa's affidavit, on or about May 10, 2000 she "caused the updated  2848 power of attorney form  along with the 1993, 1994, 1995, 1996, 1997 and 1999 tax returns to be sent to Anne Lawler [at 1250 Hancock Street, Suite 530s, Quincy, Massachusetts]." The IRS also produced a copy of a cover letter to Ms. Lawler on Attorney Champa's letterhead, dated May 10, 2000, which provided: "Enclosed please find the updated 2848 Power of Attorney Form and the requested tax returns."  The letter was signed by Jessica Ramos, presumably of Attorney Champa's office, and does not contain any indication of the means by which it was sent, i.e., certified, registered, express mail or otherwise.  Notwithstanding the letter, the IRS maintains in the Motion for Summary

---

[6] Rodkey did not sign either the Original or the Amended Claim.  Both claims were signed by Sid Gordon, in his capacity as "Advisor."

[7] It is unclear why this Affidavit was executed in 2006 and whether the Debtor also had outstanding liabilities with the Massachusetts Department of Revenue.

10

Judgment that it did not receive the Debtor's federal income tax returns for 1993 and 1995.

The IRS's Motion for Summary Judgment is also supported by the Rodkey Affidavit, dated June 17, 2013, a number of IRS notices sent to the Debtor in 2001 and account transcripts maintained by the IRS with respect to the Debtor for the tax years 1993 and 1995. As a bankruptcy specialist with the IRS, Rodkey was charged with examining the Debtor's tax liabilities prior to preparing the IRS's proofs of claim. According to Rodkey, the IRS did not receive income tax returns from the Debtor for the 1993 and 1995 tax years. The IRS then computed his tax obligations for those years, including taxes owed and applicable interest and penalties. On July 16, 2001, the IRS notified the Debtor by letter that it had computed his tax liabilities for these years, a so-called "30 day letter." The 30 day letter provided, in part: "We have enclosed two copies of our examination report showing the changes we made to your tax for the period(s) shown above. Please read the report and tell us whether you agree or disagree with the changes." The tax periods referenced on the 30 day letter were "1993, 1995-1997." On August 3, 2001, the IRS sent a follow-up letter to the Debtor which provided, in relevant part, the following:

> We have attempted to obtain unfiled returns from you. You should already be aware of this from our prior contacts with you. Generally, our practice is to deal directly with a taxpayer or a taxpayer's duly authorized representative. However, we sometimes talk with other persons . . . . We are writing to tell you that we may contact other persons. . . . . If you have any questions regarding this letter or wish to request a list of contacts, please do not hesitate to contact us. . . .

According to Rodkey, neither the Debtor nor any representative responded to the letters and the IRS issued a statutory Notice of Deficiency, also known as a "90 day letter,"

to the Debtor on October 30, 2001 by certified mail.[8]  The Notice of Deficiency provided that

the IRS had computed amounts owed for taxes and penalties for 1993 and 1995 through

1997 and that the Debtor had 90 days to contest the determination with the United States

Tax Court.  Rodkey attested that the Debtor filed neither a tax return nor a petition with the

Tax Court, and that the IRS noted a "default" on the Notice of Deficiency on March 13, 2002.

Then, according to Rodkey, "the IRS computer system automatically posted to [the

Debtor's] account the assessments that were set forth in the Notice of Deficiency . . . ."

The cover page of the Debtor's 1993 Tax Transcript provided: "Return Due Date or

Return Received Date (Whichever is later) - - Jun. 15, 2001" and contained the following

relevant entries:

| Code | Explanation of Transaction | Cycle Date |
|------|---------------------------|------------|
| 140 | Inquiry for non-filing of tax return | 06-21-1995 |
| 595 | Tax return referred for review | 08-08-2000 |
| 150 | Substitute tax return prepared by IRS | 04-22-2002 |
| 300 | Additional tax assessed by examination | 05-20-2002 |

The cover page of the 1995 Transcript also provided: "Return Due Date or Return Received

Date (Whichever is later) - - Jun. 15, 2001" and contained the following relevant entries:

---

[8] The IRS attached a copy of the certified mail receipt which contained no
delivery information and was blank but for the certified mail serial number which was
also noted on the face of the Notice of Deficiency.

| Code | Explanation of Transaction | Cycle Date |
|------|---------------------------|------------|
| 140 | Inquiry for non-filing of tax return | 05-14-1997 |
| 595 | Tax return referred for review | 08-08-2000 |
| 150 | Substitute tax return prepared by IRS | 12-10-2001 |
| 300 | Additional tax assessed by examination | 05-20-2002 |

As reflected on these Transcripts, the IRS asserts that it assessed federal income tax liability for the 1993 and 1995 tax years against the Debtor on May 20, 2002.  The assessed amounts, the IRS maintains, were based upon the Notice of Deficiency and not on any return filed by the Debtor.

The Debtor filed his Cross-Motion on July 25, 2013 seeking a determination that his 1993 and 1995 tax obligations have been discharged.[9]  The Cross-Motion is supported with a memorandum of law, a statement of undisputed facts and a number of exhibits.  The Debtor did not, however, submit his own affidavit or an affidavit of his counsel or any professional who may have prepared his tax returns for the years in question.

The Debtor asserts that he is entitled to summary judgment or, alternatively, that the Court should conduct an evidentiary hearing to resolve genuine issues of material fact.  He maintains both that he filed the 1993 and 1995 tax returns, relying on the Champa Affidavit, and that the IRS "fully and completely participated in the proceedings and ultimately

---

[9] The parties have narrowed the scope of their dispute to the 1993 and 1995 tax years, and the Court will not consider whether the Debtor's tax obligations for 2000, or any other year listed in the Amended Claim, were discharged in this case.

misled the Debtor and his counsel by failing to disclose its claims regarding the non-filing

status of the 1993 and 1995 tax returns . . . "[10] With regard to the latter assertion, the Debtor

contends that he filed the Plan in reliance on the Amended Claim and after discussions with

Attorney Ching.  In the event the Court were to conduct an evidentiary hearing, the Debtor

indicates that he "expects to introduce evidence that there were many discussions between

Counsel attempting to resolve the IRS issues."  The Debtor supports the Cross-Motion with

a number of exhibits, consisting of the pleadings, orders and proofs of claim described at

length above, the Champa Affidavit and the Seizure Notices dated June 18, 2012.    The

Debtor did not produce anything in the Cross-Motion beyond the documents he previously

filed or that were supplied by the IRS in its Motion for Summary Judgment.

B. The August 7, 2013 Hearing

The Court conducted a hearing on the Motion for Summary Judgment and the Cross-

Motion on August 7, 2013 at which the IRS attempted to clarify the entries on the 1993 and

1995 Tax Transcripts.  According to counsel, the IRS performed an internal investigation of

the Debtor's tax liabilities in 2002 because it had not received certain returns by that time.

Counsel clarified that the entry appearing on both Transcripts on August 8, 2000, entitled

"Tax return referred for review" was not an indication that a return was filed by a taxpayer

or by the IRS, but rather indicated that the "question of the return ha[d] been opened by an

examiner." The Debtor, on the other hand, argued that the date of that entry, which bears

---

[10] The Debtor repeatedly asserts in his brief that he was misled by the IRS but
also concedes that it was  "probably unintentional[]."

a date less than three months from the date of the Ramos cover letter, suggests that the IRS

actually *did* receive the 1993 and 1995 returns from the taxpayer through Attorney

Champa's office.  Counsel to the IRS added that if the Debtor believed that he had filed the

1993 and 1995 tax returns through Attorney Champa in 2000, he could have responded to

the IRS when he received their letters and notices beginning in 2001, but failed to do so.

In response to the Court's questions concerning the designation appearing on the

Original Claim with respect to the 2000 and 2005 tax returns as "Unassessed-No Return"

and why the IRS did not assert that the 1993 and 1995 returns were unfiled through the

Original or Amended Claim or through an objection to confirmation, counsel to the IRS

replied that the Debtor was on notice of this issue due to the extensive communications he

received from the IRS and that the Plan was not objectionable because it did not purport to

discharge a nondischargeable tax claim.  Counsel further explained:

> [O]nce the substitute-for-return process has been completed there is a
> return on file.  It is not the one the taxpayer prepared or submitted; it
> is one that has been prepared by the IRS, but it is not a return for
> purposes of the Bankruptcy Code. However, when an insolvency
> person at the IRS is preparing a proof of claim, they're not necessarily
> going to see an alert that a return was not filed unless they comb the
> account transcript for every period identified on the proof of claim and
> determine how the liability was assessed, which is not something that
> I think an insolvency advisor routinely does when preparing a proof
> of claim.  They compute a balance - -
>
> ***
>
> They do read the transcripts. . . but not to the level of granularity
> that they attempt to determine what type of return was filed or not
> filed or whose computations the liability is based.

The Court also questioned the IRS as to whether it had received the other returns

listed in the Champa Affidavit, namely the tax returns for the years 1994, 1996, 1997 and 1999 and why the IRS failed to seek a determination of the dischargeability of the 1993 and 1995 taxes during the pendency of the Debtor's bankruptcy case. Specifically, the Court asked counsel to the IRS whether there had been any discussions during the case between Attorney Ching and Debtor's counsel about the dischargeability of the 1993 and 1995 tax claims. The Court requested that the IRS obtain an affidavit from Attorney Ching in that regard. The IRS replied that it had no duty to identify tax returns as filed or unfiled but that it would supplement the record after the hearing with respect to the issues raised by the Court.

At the hearing, the Debtor maintained that Attorney Champa was directed by the IRS to file his missing tax returns directly with Revenue Officer Anne Lawler at the IRS's Quincy, Massachusetts office and that such directive relieved him of certain IRS regulations which require that a taxpayer establish the filing of a tax return through proof of actual delivery or through proof of specialized mailing. The Debtor maintained that, based on the Champa Affidavit and the Ramos cover letter, a reasonable inference of delivery of the missing tax returns could be drawn, especially in light of his belief that the IRS received the other missing returns listed in the Champa Affidavit. In light of these issues, the Court requested that the IRS produce an affidavit of Revenue Officer Lawler and the transcripts for the Debtor's 1994, 1996, 1997 and 1999 tax years. The Debtor also maintained at the hearing that he never received the IRS Notice of Deficiency and pointed to the blank certified mail receipt attached to the IRS's Motion for Summary Judgment, although he

16

submitted no affidavit in support of that position.

C. The Post-Hearing Record

At the conclusion of the August 7th hearing, the Court ordered the parties to supplement the summary judgment record with respect to the issues raised at the hearing. The Debtor produced a Supplemental Affidavit of Attorney Champa, dated August 30, 2013, which she prepared after reviewing the summary judgment record. The Supplemental Affidavit provided additional facts concerning her representation of the Debtor and provided, in pertinent part, the following:

> Early in the year of 2000, [the Debtor] retained me for the purposes of representing him in certain potential criminal tax matters. The tax years in question were 1993, 1994, 1995, 1996, 1997 and 1999. It is my understanding that [the Debtor] had been previously contacted by the [IRS] regarding missing tax returns for the above-cited years. . . . The contact person at the [IRS] regarding this matter was Anne Lawler, whose office was located [in Quincy.] Because I was not in the practice of preparing tax returns, I instructed [the Debtor], to have the income tax returns for the cited years prepared and get them to me as soon as possible. . . . Sometime in early May of 2000, [the Debtor] returned to my office with the completed income tax returns for the years 1993, 1994, 1995, 1996, 1997 and 1999. Consistent with my communications with Anne Lawler . . . , [she] instructed me to have the income tax returns prepared, execute a power of attorney . . . and to forward the tax returns for the years cited above to her attention at the [IRS] office in Quincy, MA. On May 10, 2000, . . . I prepared a package containing the [above cited] tax returns to be forwarded to Anne Lawler, as per her instructions, and instructed my secretary at that time, Jessica Ramos, to mail, by U.S. Postal Service, the package to the [IRS] in Quincy, MA. The package was mailed to the [IRS] in the normal course of business on May 10, 2000. . . . To the best of my knowledge, the package . . . was not returned to my office by the U.S. Postal Service. To the best of my knowledge there were no criminal charges filed against [the Debtor] once the tax returns . . . were

mailed by my secretary and therefore my engagement was concluded.[11]

The IRS also supplemented the record and produced the following records with respect to the Debtor: (1) IRS Form 3050, entitled a "Certification of Lack of Record" (the "Certification"), signed by Claudette Johnson, an IRS Accounting Operations Manager, on August 16, 2013, with respect to tax years 1993, 1995, 1996 and 1997; (2) IRS Form 3449-CG, entitled "Referral Report" signed by Anne Lawler on August 8, 2000; (3) a Second Declaration of Michael Rodkey, dated September 20, 2013 (the "Second Rodkey Affidavit"); (4) tax transcripts for the Debtor's 1996, 1997 and 1999 tax years; and (5) "dummy" IRS Form 1040 returns prepared by the IRS with respect to the Debtor for tax years 1993, 1995 and 1997. The IRS did not submit affidavits of Anne Lawler, who is retired from the IRS and whose current whereabouts are unknown, or Attorney Ching, who is currently on a leave of absence from the IRS and "is not available to provide a declaration at this time."

The Certification provided, in part: "I certify that, having made a diligent search for the described record(s) [Forms 1040 for 1993, 1995, 1996 and 1997], no such record(s) or entry(ies) pertaining to such record(s) was/were found." The Referral Report referenced the same tax years and provides, in part: "Numerous attempts have been made to obtain returns, they were never submitted. POA had promised to send signed 1040s over one month ago. None received. . . ." These documents were explained in the Second Rodkey

---

[11] The first Champa Affidavit provided that the Debtor retained her in 1999 and this Supplemental Affidavit provides that he retained her with respect to a potential criminal tax matter in 2000. It is unclear whether he engaged her at separate times for different matters or whether one of the affidavits contains an incorrect date.

Affidavit which provided, in part, the following:

4a. The IRS has no record of ever having received an individual income tax return from [the Debtor] for the tax years 1993, 1995, 1996 or 1997.

b. Revenue Officer Anne Lawler noted in the file that she attempted to obtain returns from the taxpayer's Power of Attorney (POA), but, having received no returns, she executed a Form 3449-CG, Referral Report to Examination Division. . . .

c. IRS administrative files indicate that assessments of tax liability were made against [the Debtor] for the periods 1993, 1995, 1996 and 1997 pursuant to the procedure outlined in Paragraph 4 of my Declaration of June 17, 2013.

i. [Transcripts for 1996 and 1997] incorrectly state that a return was filed for these periods, which is inconsistent with materials in the administrative file and with the manner in which the taxpayer's liability was assessed. They also state that the balance on the "tax return filed" (code 150) was zero.

ii. To initiate the deficiency assessment process where no return has been filed, the IRS prepares a "dummy return" - a blank Form 1040 for the relevant period - that is entered into the taxpayer's administrative file for that period in lieu of a filed return. True and correct copies of the "dummy returns" prepared by the IRS for the debtor's 1993, 1995 and 1997 accounts, which were all relayed to the Examination Division on June 15, 2001 . . . . (The "dummy return" for 1996 is not available in the administrative  file and has likely been destroyed pursuant to IRS standard document retention policies.)

iii. The presence in the file of these "dummy returns," with dates that match the "return received date" on the debtor's 1996 and 1997 transcripts; the zero balance indicated on the transcripts; the Form 3449-CG prepared by Revenue Officer Anne Lawler on August 8, 2000; and the absence from the administrative file of any returns actually filed by the debtor, all indicate that the code "150 Tax Return Filed" on the debtor's 1996 and 1997 account transcripts was entered in error.

d. The IRS did timely receive an individual income tax return from [the Debtor] for the tax year 1999.

e. The transcript of [the Debtor's] account for 1999 indicates that his tax return had been received by the IRS on April 15, 2000. . .

f. The IRS does not assert that [the Debtor] owes any liability for 1999 that was not discharged in the instant bankruptcy.

5. The liabilities indicated on the IRS Proof of Claim for the tax years 1993,

1995, 1996 and 1997 reflect the computations made by the Internal Revenue Service, in the absence of returns filed by the debtor, and include penalties and interest to the petition date.

In sum, Rodkey attested that the IRS has no record of ever receiving the Debtor's tax returns for the 1993, 1995, 1996 or 1997 tax years but that it did receive a timely return for the 1999 tax year; Revenue Officer Lawler certified on August 8, 2000 that she had not received the 1993, 1995, 1996 and 1997 returns despite the promise of the "POA;" and the IRS prepared a "dummy return" (a blank Form 1040) for the Debtor for 1993, 1995 through 1997. Additionally, Rodkey attested that the 1996 and 1997 tax transcripts both contained an erroneous entry under Code 150 of "tax return filed" when, in fact, the IRS had filed a "dummy" return for those years and transmitted them to the Examination Division on June 15, 2001. In other words, the IRS discovered in the current litigation concerning the 1993 and 1995 tax years that the Debtor also failed to file returns for 1996 and 1997 and that its own internal tax transcripts for those years contained erroneous entries in that regard.

## IV. POSITIONS OF THE PARTIES

### A. The IRS

The IRS maintains that, pursuant to 11 U.S.C. § 523(a)(1)(B)(i), the Debtor's income tax liabilities for 1993 and 1995 were not discharged because he did not file returns for those years, nor can he prove otherwise. The Champa Affidavit and the Ramos cover letter, the IRS argues, are insufficient to establish actual mailing, much less actual receipt, of the 1993 and 1995 returns by the IRS. It maintains that in light of the Debtor's failure to produce a postmarked, certified mail receipt, return receipt, proof of delivery by U.S. mail

20

or other courier, or the testimony of a person who actually mailed the returns, he cannot meet his evidentiary burden under 26 U.S.C. § 7502, which governs the timeliness of filings mailed to the IRS. Additionally, the IRS argues that it has established through supplemental evidence, namely the Certification and the Referral Report, that no returns were filed by the Debtor for 1993 or 1995 and that, in fact, the Debtor also failed to file returns for 1996 and 1997.

B. The Debtor

The Debtor maintains that the Court should enter summary judgment in his favor and determine that his income tax liability for the 1993 and 1995 tax years was discharged following the entry of his discharge order because he filed returns for those years in 2000 through Attorney Champa's office.[12] He contends that he has established a reasonable inference of delivery based upon Attorney Champa's affidavits. Moreover, he asserts that Attorney Champa was directed by the IRS to send the returns directly to Revenue Officer Anne Lawler at the IRS's Quincy office and that such directive relieved him of the IRS regulatory scheme which requires proof of actual delivery or proof of specialized mailing to establish the filing of a tax return. His belief that the IRS received the Attorney Champa mailing was originally bolstered by his understanding that "only the 1993 and 1995 tax returns are missing," an assertion later disputed by the IRS in its supplement to the summary judgment record.

---

[12] The Court presumes that the Debtor is relying on § 523(a)(1)(B)(ii), although he does not specifically refer to that provision in his briefs.

21

The Debtor opposes summary judgment in favor of the IRS due to the existence of disputed issues of material fact, including, whether Attorney Ching misled Debtor's counsel by failing to disclose the allegedly unfiled status of the 1993 and 1995 returns and whether the IRS actually received the missing returns through Revenue Officer Lawler.

The Debtor also maintains that the IRS is not entitled to summary judgment as a matter of law based on the principle of *res judicata* with respect to the confirmation order. The Debtor argues that he proposed the Plan following numerous discussions with Attorney Ching, and that the IRS is bound by the confirmation order to which it did not object and from which it did not appeal, relying on a number of cases involving the dischargeability of student loan debts, including United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 130 S. Ct. 1367 (2010). He contends that the IRS misled him "through many discussions between Counsel attempting to resolve the IRS issues" and by failing to raise the issue of the unfiled returns in either the confirmation process or in the Amended Claim, which contained no "unfiled" tax return designation. He did not, however, produce any affidavits about the substance of the communications between Attorney Ching and Debtor's counsel or demonstrate that the IRS and the Debtor had an agreement with respect to the dischargeablity of certain taxes. He also concedes that the IRS's misleading conduct could have been unintentional and that it had no duty to bring the issue of unfiled returns to his attention, but that it should be held accountable for even its negligent misrepresentations.

## V. DISCUSSION

### A. Summary Judgment Standard

A party is entitled to summary judgment if it establishes that there are no material facts in dispute and it is entitled to judgment as a matter of law. *See* Fed. R. Civ.P. 56(a), made applicable to this proceeding by Fed. R. Bankr. P. 7056.[13]   In <u>Desmond v. Varrasso</u> <u>(In re Varrasso)</u>, 37 F.3d 760 (1st Cir.1994), the United States Court of Appeals for the First Circuit articulated the standard for allowance of motions for summary judgment, stating:

> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. . . . As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality—say, affidavits or depositions—that support his position. *See* <u>Lopez v. Corporacion Azucarera de Puerto Rico</u>, 938 F.2d 1510, 1517 (1st Cir.1991); <u>Bias v. Advantage Int'l, Inc.</u>, 905 F.2d 1558, 1560–61 (D.C.Cir.), *cert. denied*, 498 U.S. 958, 111 S.Ct. 387, 112 L.Ed.2d 397 (1990); *cf.* <u>Mendez v. Banco Popular de Puerto Rico</u>, 900 F.2d 4, 7 (1st Cir.1990)("The mere fact that plaintiff failed to file a timely opposition does not mean that defendant's Rule 56 motion should be granted"). When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. *See, e.g.*, <u>Morris v. Government Dev. Bank</u>, 27 F.3d 746, 748 (1st Cir.1994); <u>Garside [v. Osco Drug, Inc.]</u>, 895 F.2d [46] at 48 [(1st Cir.1990)]; <u>Greenburg v. Puerto Rico Maritime Shipping Auth.</u>, 835 F.2d 932, 934 (1st Cir.1987). This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. *See* <u>Blanchard v. Peerless Ins. Co.</u>, 958 F.2d 483, 488 (1st Cir.1992)(warning that summary judgment is precluded "unless no reasonable trier of fact could draw any other inference from the

---

[13]   Fed. R. Civ. P. 56 was amended effective December 1, 2010. The summary judgment standard now appears in subsection (a) of Rule 56, rather than at subsection (c). The amended rule, however, does not change the standard for summary judgment. *See* <u>Farmers Ins. Exch. v. RNK, Inc.</u>, 632 F.3d 777, 782 n.4 (1st Cir. 2011).

'totality of the circumstances' revealed by the undisputed evidence").

37 F.3d at 763 (footnote omitted).

B. Applicable Law

Section 1328(a) of the Bankruptcy Code, which governs the discharge of a Chapter

13 debtor, provides, in relevant part, the following:

> (a) . . . after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt--
> ***
>   (2) of the kind specified in . . . paragraph (1)(B) . . . of section 523(a);

11 U.S.C. § 1328(a)(2).

Section 523(a) excepts from discharge certain tax obligations of individuals and

provides, in relevant part, the following:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>   (1) for a tax or a customs duty—
>
> * * *
>   (B) with respect to which a return, or equivalent report or notice, if required—
>     (i) was not filed or given; or
>     (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition;

11 U.S.C. § 523(a)(1)(B). "Put simply, subsection (i) of 11 U.S.C. § 523(a)(1)(B) renders tax

liabilities nondischargeable where the debtor fails to file a return, while subsection (ii)

makes tax liabilities nondischargeable where the debtor files an untimely return and later

than a date that is two years prior to the bankruptcy petition." Pendergast v. Massachusetts

24

Dep't of Revenue (In re Pendergast), 494 B.R. 8, 12 (Bankr. D. Mass. 2013).   The

unnumbered "hanging paragraph" of § 523(a) provides that a "return" "does not include

a return made pursuant to section 6020(b) of the Internal Revenue Code . . . . " This is the

type of return the IRS maintains it filed on the Debtor's behalf for the 1993 and 1995 tax

years.  *See* the IRS's Response to the Determination Motion. "[T]he standard of proof for

the  dischargeability  exceptions  in  11  U.S.C.  §  523(a)  is  the  ordinary

preponderance-of-the-evidence standard." Grogan v. Garner, 498 U.S. 279, 291 111 S.Ct.

654, 661 (1991).  In a § 523(a)(1) proceeding, the IRS has the burden of proving the Debtor's

debts to be nondischargeable.  Savage v. Internal Revenue Serv. (In re Savage) 218 B.R. 126,

133 (B.A.P. 10th Cir. 1998).  *See also* Rossman v. United States (In re Rossman), 487 B.R. 18

(Bankr. D. Mass. 2012)(burden of proof is on the government to except tax debt from

discharge under 11 U.S.C. § 523(a)(1)(C)).

Pursuant to § 7502(a) and (c) of the Internal Revenue Code ("IRC"),  a return is

deemed timely filed on the date of the postmark of the envelope or the date a receipt is

issued by the Post Office for either certified or registered mail.  The statute provides, in

relevant part:

(a) General Rule. --

(1) Date of Delivery. - - If any return . . . required to be filed  . . .
within a prescribed period or on or before a prescribed date . . . is,
after such period or such date, delivered by United States mail to
the  agency,  officer,  or  office  with  which  such  return,  claim,
statement, or other document is required to be filed, . . .  the date of
the United States postmark stamped on the cover in which such
return, . . . is mailed shall be deemed to be the date of delivery . . .

to the agency postmark stamped on the cover in which such return
. . . is mailed shall be deemed to be the date of delivery . . . .

\*\*\*

(c) Registered and certified mailing; electronic filing.--

(1) Registered mail.--For purposes of this section, if any return .
. . , is sent by United States registered mail--
    (A) such registration shall be prima facie evidence that the
    return . . . , was delivered to the agency, officer, or office to
    which addressed; and
    (B) the date of registration shall be deemed the postmark
    date.
(2) Certified mail; electronic filing.--The Secretary is authorized to
provide by regulations the extent to which the provisions of
paragraph (1) with respect to prima facie evidence of delivery and
the postmark date shall apply to certified mail and electronic filing.

26 U.S.C. § 7502(a), (c).  The Court in <u>Pizzuto v. Internal Revenue Serv. (In re Pizzuto)</u>, 384

B.R. 105 (Bankr. D. N.J. 2008) examined IRC § 7502 in the context of a dischargeability

dispute under 11 U.S.C. § 523(a)(1)(B).  It observed:

> Prior to passage of § 7502, the Supreme Court determined that "filing ... is not
> complete until the document is delivered and received. . . . A paper is filed
> when it is delivered to the proper official and by him received and filed."
> <u>United States v. Lombardo</u>, 241 U.S. 73, 76, 36 S. Ct. 508, 60 L. Ed. 897 (1916).
> This ruling by the Supreme Court is commonly described as the physical
> delivery rule.
> 
> \*\*\*
> 
> The statute essentially contains two exceptions to the physical delivery rule.
> Section 7502(a)(1) applies when a document is mailed prior to the due date,
> but received by the IRS after the date has expired. The statute provides in
> pertinent part that "the date of the United States postmark stamped on the
> cover in which such return . . . is mailed shall be deemed to be the date of
> delivery or the date of payment, as the case may be." 26 U.S.C. § 7502(a)(1).
> 
> The second exception, § 7502(c) is crafted to apply to documents sent by
> registered or certified mail, or by filing electronically.

26

In re Pizzuto, 384 B.R. at 108-110.

     C. Analysis

     The parties do not dispute that the tax underlying the Debtor's tax liabilities for 1993

and 1995 each required a return.   The Debtor seeks summary judgment that the 1993 and

1995 tax obligations have been discharged because he filed the returns for those years

through Attorney Champa in 2000, more than two years prior to commencing his

bankruptcy case.[14]   The IRS seeks summary judgment that the obligations for those years

have not been discharged pursuant to §523(a)(1)(B)(i) based upon its contention that the

returns were never filed.   The facts of this case are similar to those in In re Pizzuto, supra,

in which a debtor, who filed a Chapter 7 bankruptcy petition in 2006, sought a declaratory

judgment that his 1995 federal income tax return had been filed on or about July 31, 1998.

Alternatively, he also claimed that his counsel later forwarded a copy of that return to an

IRS special agent on June 3, 2002.   The Pizzuto court examined the issue of whether a

debtor is limited to the methods provided in IRC § 7502 to prove that a mailed tax return

was filed or whether a debtor could "adduce extrinsic evidence to prove that the return

was timely filed."[15]   Specifically, the court addressed whether a taxpayer could rely on the

---

     [14] As noted above, the Court presumes the Debtor is relying on §523(a)(1)(B)(ii), although he does not specifically refer to that provision in his briefs.

     [15] This Court presumes that the Pizzuto court's use of the word "timely" was a reference to the "after two years before the date of the filing of the petition" time period required for dischargeability of tax obligations under 11 U.S.C. § 523(a)(1)(B)(ii).

common law "mailbox rule" which creates a rebuttable presumption that a mailed

document, containing a proper address and postage, is received.  In re Pizzuto, 384 B.R. at

109 n.2.   The court observed:

> [Section 7502] is silent regarding whether delivery of a tax return or other
> document can be proved by means other than the two exceptions to the
> physical delivery rule set forth in § 7502(a)(1) and § 7502(c). Consequently,
> courts have reached divergent results on the question of how a taxpayer may
> prove delivery when the taxpayer claims to have timely mailed the
> document, but the agency has no record of timely receipt of the tax return or
> other document. Indeed, there is a split among the Circuits as to whether §
> 7502 creates the only exception to the physical delivery rule.  Some Circuits
> have held that § 7502 supersedes the mailbox rule, and without a postmark,
> the physical delivery rule applies in situations where the exceptions in
> subsection (c) regarding registered and certified mail, and electronic filing do
> not apply. *See* Miller v. United States, 784 F.2d 728 (6th Cir.1986); Deutsch v.
> Comm'r, 599 F.2d 44 (2d Cir.1979) . . . . By contrast, other Circuits have held
> that the mailbox rule still applies and that extrinsic evidence of mailing will
> create a rebuttable presumption of filing. *See* Anderson v. United States, 966
> F.2d 487 (9th Cir.1992); Estate of Wood v. Comm'r, 909 F.2d 1155 (8th
> Cir.1990).

Id., at 109-10.  The court determined that it did not need to resolve the conflict among the

Circuits as the debtor's only evidence of mailing was his own uncorroborated testimony.

Moreover, it held, the Tax Code, applicable regulations and case law all supported the

holding that giving a delinquent return to an IRS agent did not constitute a filing of a tax

return. Id. at 112-13.

    The United States Court of Appeals for the First Circuit in Maine Med. Ctr. v.

United States, 675 F.3d 110 (1st Cir. 2012), noted the split of authority as to whether IRC §

7502 supplants the common law mailbox rule and held that "we need not decide on which

side of the circuit split we fall" based on the facts presented in that case.  Id. at 115 n.8.

Moreover, the <u>Maine Med</u>. court also noted that recent IRS regulations interpreting § 7502 "would appear to foreclose the use of extrinsic evidence as a means of proving a timely postmark." <u>Id</u>. at 118. *See* 26 C.F.R. § 301.7502-1(e)(2)(2011).  While <u>Maine Med</u>. involved a plaintiff's claim of a timely filed tax refund claim through extrinsic evidence, as opposed to a debtor's claim that tax returns were filed after their due date but within the time frame permitted for dischargeability under 11 U.S.C. § 523(a)(1)(B), the holding evidences the First Circuit's apparent disinclination to accept extrinsic evidence in the absence of a postmark or a certified or registered mail receipt.

In this case, the Debtor does not contend that he has met the physical delivery requirement or the exceptions to that rule contained in IRC § 7502, namely proof of postmark or certified or registered mail receipt.   Instead, he seeks to draw a "reasonable inference" of mailing and delivery solely through the affidavits of Attorney Champa.  Even were this Court to accept the extrinsic evidence of mailing offered by the Debtor, the Court finds his evidentiary showing to be wholly inadequate for him to either obtain summary judgment or to defeat the IRS's Motion for Summary Judgment.

The First Champa Affidavit merely provides that she "caused the . . . tax returns to be sent to Anne Lawler." In her Supplemental Affidavit, she added that the package containing the returns was sent to Anne Lawler in the normal course of business on May 10, 2000 and that it was not, to the best of her knowledge, returned by the U.S. Postal Service.  The Debtor provided no affidavit of his own concerning his delivery of the returns to Attorney Champa, the ultimate disposition of the IRS's criminal investigation of him or

29

his receipt of the various notices mailed to him by the IRS in 2001.  He also did not produce an affidavit of any professional who prepared the returns on his behalf or even copies of the mailed returns themselves.  The Court finds that Attorney Champa's uncorroborated statement that she instructed her secretary to mail the package of returns and that it was not returned "to the best of [her] knowledge" fails to sufficiently rebut the IRS's showing, through the Certification and the Referral Report, that it has never received the 1993 or 1995 returns.  Indeed, the Champa Affidavits raise more questions than they answer as she provides no information therein about any follow up she undertook with Revenue Agent Lawler, despite the existence of a criminal investigation of the Debtor.  Moreover, she did not explain why her engagement by the Debtor concluded without confirmation of the IRS's receipt of the outstanding returns.

The Debtor's position concerning the 2000 mailing has been further undermined by the IRS's supplement to the summary judgment record in which it has established through the unrebutted Certification that it has not received other returns purportedly mailed by Attorney Champa's office, namely the 1996 and 1997 returns.  Moreover, even were the Debtor to have established Attorney Champa's delivery of the 1993 and 1995 returns to Revenue Agent Lawler in 2000, he has provided no legal authority for determining that delivery to an IRS agent constitutes the filing of a tax return for purposes of 11 U.S.C. § 523(a)(1)(B)(ii).  *See* In re Pizzuto, at 112-13.

The Debtor seeks to defeat the IRS's Motion for Summary Judgment by attempting to create an issue of fact about whether Attorney Ching misled his counsel concerning the

unfiled status of the 1993 and 1995 tax returns. The Court finds the Debtor's unsupported allegations insufficient to create a genuine issue of material fact that would preclude summary judgment in favor of the IRS for a number of reasons. First, the Debtor submitted no affidavit of his own or from his counsel about the substance of the misleading conversations with Attorney Ching. The Debtor's general allegations do not show "specific facts" that are required by a non-movant to show a genuine issue for trial under Fed. R. Civ. P. 56. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986)(applying former Fed. R. Civ. P. 56(e)). Second, the Debtor acknowledges that the IRS had no duty to come forward and show that the returns were unfiled. Third, the Debtor could have commenced an adversary proceeding to determine the dischargeability of the tax debt pursuant to 11 U.S.C. § 523(a)(1)(B) at any time during the pendency of his case. The Debtor's Schedule F filed in this case listed the IRS as the holder of a claim in an unknown amount for "1993-1999 1040 taxes," so the issue of past-due taxes was clearly evident to the Debtor at the outset of this case.

The Court is also unpersuaded by the Debtor's contention that the IRS is bound, to its detriment, by the Amended Claim which did not designate any return as "unfiled." As stated above, the IRS has submitted unrebutted evidence that returns for 1993 and 1995 were on file for the Debtor for those years, although the returns were prepared by the IRS pursuant to 26 U.S.C. § 6020(b) and not by the Debtor himself. Although such a notation on the proof of claim form would have been helpful in this case, the Debtor points to no requirement mandating this.

31

Lastly, the Court finds that the Debtor's reliance on <u>United Student Aid Funds, Inc.</u> <u>v. Espinosa</u>, 559 U.S. 260, 130 S. Ct. 1367 (2010), is misplaced. In that case, the United States Supreme Court ruled that a final order confirming a Chapter 13 plan which explicitly provided that the accrued interest on a student loan obligation would be discharged upon completion of the plan without findings and rulings of undue hardship in an adversary proceeding, was binding on the student loan creditor which had notice of the plan terms but failed to object to confirmation. The United States Bankruptcy Appellate Panel for the First Circuit in <u>United States v. Monahan (In re Monahan)</u>, 497 B.R. 642 (B.A.P. 1st Cir. 2013), recently addressed an issue similar to that advanced by the Debtor here. In <u>Monahan</u>, a debtor, relying on <u>Espinosa</u>, asserted that the IRS was bound by the confirmation of a Chapter 13 plan which provided for full payment of the IRS's priority claim although it did not provide for the discharge of the priority tax claim upon completion of the plan. As here, the IRS never objected to the debtor's motion for entry of a discharge or her Chapter 13 plan despite receiving notice. The Panel noted the parameters of <u>Espinosa</u>:

> Courts have held that <u>Espinosa</u> stands for the "limited proposition that a confirmed plan is binding on all parties-in-interest, *provided the plan proponent afforded such parties adequate notice*, consistent with the Due Process Clause of the United States Constitution—even if the plan violates the Bankruptcy Code in some particulars." <u>In re Deavila</u>, 431 B.R. 178, 179 (Bankr. W. D. Mich. 2010) (emphasis added);

<u>Monahan</u> at 651. The Panel found that interest on the Debtor's priority tax debt had not been discharged because the plan did not provide for the discharge of the priority tax

claim. Id. The Debtor's Plan in this case suffers from a similar infirmity as it is silent as to the dischargeability of any claims, including tax claims. Accordingly, the Court finds the facts of this case to be distinguishable from Espinosa.

Notwithstanding the Debtor's failure to raise a viable legal issue to preclude summary judgment or to create a genuine factual issue which would require a trial, the Court is compelled to note the conduct of the IRS in this matter. By design or neglect, it lulled the Debtor into believing his tax problems had been resolved through his confirmed Plan. Additionally, the record is replete with examples of mistakes it made, some of which it revealed only when ordered by the Court to supplement the summary judgment record.

The Debtor's 1995 Tax Transcript contains an entry dated December 10, 2001 entitled "Substitute tax return prepared by the IRS," a date less than the 90 day response period afforded by the Notice of Deficiency issued by the IRS on October 30, 2001 and three months before the IRS noted a default with respect to that notice. The Debtor's tax transcripts for 1996 and 1997 erroneously provide that a return was filed on August 20, 2001 and August 27, 2001, respectively, when, in fact, the IRS had filed a "dummy return" for those years and transmitted them to the Examination Division on June 15, 2001. Both of those transcripts also provide that the balance due for those years was zero despite the amount set forth as owed on the Amended Claim. This, in part, may explain why the Seizure Notices the IRS issued after the case was closed only referenced tax years 1993, 1995 and 2000. Had this mistake not been uncovered in the context of the current litigation, it is likely that the IRS would have issued further seizure notices to the Debtor despite his

33

years' long efforts to achieve a full and final determination of his outstanding tax obligations from the IRS.   The IRS also destroyed salient tax records which it unconvincingly described as consistent with "IRS standard document retention policies." Lastly, the IRS's failure to produce the affidavit of Attorney Ching in response to the Court's request demonstrates the necessity of a court order in future cases involving the IRS.   Had the Debtor proffered a stronger record to raise a genuine issue of material fact in this matter, the Court would have mandated the presence of Attorney Ching at an evidentiary hearing.

## VI. CONCLUSION

For all of the above reasons, the Court finds that the IRS has established by a preponderance of the evidence that the Debtor did not file his 1993 or 1995 tax returns with the IRS.   The IRS has met its burden on summary judgment of demonstrating that there is no genuine dispute as to the material facts, and that it is entitled to a judgment as a matter of law that the Debtor's tax obligations for those years have not been discharged pursuant to 11 U.S.C. § 523(a)(1)(B)(i).   The Debtor has failed to demonstrate the existence of disputed issues of material fact or entitlement to judgment as a matter of law.   Accordingly, the IRS's Motion for Summary Judgment on the Determination Motion is granted, and the Debtor's tax obligations for the 1993 and 1995 tax years are determined to be

nondischargeable.  The Debtor's opposition is overruled, and his Cross Motion is denied.


By the Court,


Dated: December 30, 2013                    Joan N. Feeney
                                            United States Bankruptcy Judge